THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HERMAN RAY LOCKETT, Defendant-Appellant.

(No. 56809; ▆▆▆▆▆▆▆▆)

First District—July 25, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen, Ronald P. Katz, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle and James Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

The defendant was indicted for murder, armed robbery and attempted robbery. He was tried by a jury, found guilty of murder and armed robbery, and sentenced by the court to serve a term of not less than 60 nor more than 100 years in the State penitentiary. On appeal he contends (1) the prosecutor's closing argument to the jury deprived him of his constitutional right to due process of law; (2) he was not proved guilty beyond a reasonable doubt; and (3) the sentence imposed upon him was excessive. The facts follow.

On November 22, 1968, a C.T.A. bus going north on Damen Avenue in Chicago was held up by a group of young men averaging 22 years of age. During the incident a woman passenger, Mrs. Walter Zielinski, was shot and killed by one of the robbers. Defendant Lockett, Grover Thomas, Andrew Prim and James Williams were indicted for the robbery and murder. Both the defendant and Thomas gave written statements to the police, with each naming the other as the one who fired the shot.

At the trial the bus driver, Mitchell Bateast, testified that on November 22, 1968, he picked up four male Negroes at Roosevelt Road; that on North Damen the men pulled guns; that one of them—James Williams— had a rifle which he held on the driver. Bateast heard a shot fired, but did not turn around or see the men in the back of the bus because of the rifle pointed at him.

William Reed, a passenger, testified that he was talking to the driver when Williams pulled the rifle and announced a holdup. Reed then sat down and heard a shot, but did not turn around to see the back of the bus.

Guernsey Romaine testified that he was in the rear of the bus when the holdup was announced. He stated that he had been drinking, and because his vision was impaired he could not identify anyone. However, he did testify that the killer was about six feet tall and weighed about 170 pounds. [Defendant is six feet one inch tall and weighs 150 pounds. Grover Thomas is five feet eight inches tall.]

Dorothy Harris, another passenger on the bus, testified that she saw a man with a rifle and heard him announce a holdup, and also saw a man in the back of the bus with a pearl-handled revolver. She stated that she

saw Mrs. Zielinski shot, but since she was turned away from the killer she could not see his face.

William Giersz testified that he sat in the middle of the bus, facing forward, during the robbery and did not see the man shoot Mrs. Zielinski. Giersz's wallet was taken by the robbers.

Emelindo Maldonado testified that he boarded the bus with Mrs. Zielinski and sat in the rear, directly behind her. He testified that the defendant was one of four men who boarded the bus at Roosevelt Road; that two of the men took the bus driver's money; that defendant Lockett robbed him, then went over to Mrs. Zielinski, attempted to take her purse, then shot her. He stated that he identified the four robbers from police photographs and identified defendant in court as the one who shot Mrs. Zielinski.

Grover Thomas testified that he boarded the bus with defendant Lockett, Prim and Williams, assuming that they were all going to visit a girl. He stated that the defendant and Williams perpetrated the hold-up, the defendant with a pistol and Williams with a rifle; that defendant took a wallet from a Mexican, handed it to the witness, then tried to take a purse from a woman passenger, and shot her. The witness left the bus by the rear exit, threw the wallet into the street and ran to a friend's house. After his arrest the next day he went to the State's Attorney's Office on the advice of his attorney, and had been in the witness quarters since April 22, 1969.

The defendant testified that he boarded the bus a block after Prim, Williams and Thomas boarded it, and took a seat behind Thomas near the rear exit door. He stated that Williams pulled a rifle, went to the front of the bus and held the rifle on the driver; that Grover Thomas had a pistol, and the defendant saw him tussling with Mrs. Zielinski, then heard a shot. The defendant left the bus and ran home. He was arrested later and gave the police a statement. We proceed to a consideration of his first contention that the prosecutor engaged in prejudicial misconduct in his closing argument, depriving defendant of his constitutional right to due process of law.

In his final argument to the jury the prosecutor said:

"Counsel has raised inferences that Grover Thomas has been made promises. I guarantee you that as the lawyer for the State no promises have ever been made to Grover Thomas. He is yet to be prosecuted. He says, well, if no promises were ever made to you, Mr. Thomas, how about your lawyer? Do you remember who Grover Thomas' lawyer was? Lee Lebeck, an attorney who practices in the loop. There is no evidence for you to consider that any promises have ever been made

to Lee Lebeck. Grover Thomas said there wasn't and counsel, if he so chose, could have subpoenaed Lee Lebeck into court and ask him himself, but he didn't do that."

Defendant argues that by this comment the jury was left to conclude that the remarks were true; that the failure of defense to call Lebeck as a witness proved the State's denial that any promises were made to the alleged accomplice, Grover Thomas, to induce his testimony. Defendant further argues that the prosecutor was giving evidence without being sworn when he said, "I guarantee * * * no promises have ever been made to Grover Thomas."

■■ The comment referred to was used by the prosecutor and was intended to rebut the inference raised by the defense in cross-examination and closing argument that the witness, Grover Thomas, had been promised leniency through his attorney. The State charges that this inference was false, that the defense could have called Thomas' attorney to the witness stand to testify to the alleged promises, but no such testimony was produced. The alleged promise of leniency to Thomas was first introduced into the trial by the defense attorney when he asked Thomas on cross-examination if a promise was made to his lawyer. Thomas denied this. Then, in his closing argument the defense counsel argued that Thomas had entered into a deal with the State and had testified falsely. Since the defense first interjected the alleged promise of leniency into the case it was fair comment for the State to argue that the defense could have called the attorney with whom such a deal was supposedly made. Once the defense opened the door it was permissible for the State to comment on the defense's failure to prove such a deal. When the defense presents an allegation the State has the right to comment upon it. See *People v. Izzo*, 14 Ill.2d 203; *People v. Wheeler*, 5 Ill.2d 474.

■■ The prosecutor, in his statement, was not giving evidence without being sworn. The record shows that the State's Attorney's comment was based on the questions asked Thomas concerning an alleged deal with the State. The comment was not evidence, but was a remark based on what the evidence at trial showed or failed to show.

■■■ Defendant next contends that he was not proved guilty beyond a reasonable doubt; that too much weight was given to the testimony of Grover Thomas, the alleged accomplice; and that the only witness who identified the defendant—Emelindo Maldonado—was easily influenced and untrustworthy. The defendant argues that the testimony of an accomplice who is trying to clear himself is attended with suspicion, and cites *People v. Grove*, 284 Ill. 429. While this is true, a conviction can

rest solely upon an accomplice's testimony even if the accomplice appears to be minimizing his own participation in the crime. *People v. Mullins*, 28 Ill.2d 412.

Defendant argues that the identification witness, Maldonado, was not trustworthy because of his linguistic difficulty, the fact that some of his testimony was contradicted by a police officer, and the fact that two other witnesses could not identify the defendant. The record indicates that on certain questions the witness was confused, but the trial judge had a *voir dire* hearing after which he ruled that the witness was competent to testify without an interpreter. Also, the witness seemed confused and did not understand the questions about how many men he identified from photographs, but it is clear from the record that the witness did identify the defendant in court as the man who shot Mrs. Zielinski. There was no doubt that he understood the question regarding the identification of the defendant. Some of the witness' testimony was contradicted by Detective Sandberg in regard to the number of men Maldonado identified from photographs. It appears from the record that the witness was confused by this line of questioning and did not understand. This, however, does not discredit his identification of the defendant in court.

Maldonado was the only occurrence witness who identified the defendant, although there were several other passengers on the bus at the time of the holdup. It is clear from their testimony that the other passengers did not see the robbers in the back of the bus, nor did they see the shooting. The witnesses did not attempt to identify the defendant, and testified that they did not see the holdup men as they were not in positions to view the shooting. The failure of these witnesses to identify the defendant does not affect the credibility of Maldonado's identification, since he was the only witness who had a reasonably good look at the holdup men and the shooting incident.

■■ It is well settled that it is the function of the jury to weigh testimony, judge the credibility of witnesses and determine factual matters. A court of review will not substitute its judgment for that of a jury, nor disturb the finding of a jury unless the finding is contrary to the manifest weight of the evidence. (*People v. Nicholls*, 42 Ill.2d 91; *People v. Woods*, 26 Ill.2d 582.) In the instant case the jury heard all the evidence and found defendant guilty beyond a reasonable doubt. Their finding is amply supported by the evidence.

The defendant finally contends that the sentence imposed was excessive. He argues that a sentence of 60 to 100 years is too severe, that the minimum is too long for punishment, and the maximum too long for any hope of rehabilitation for a 22-year-old man.

■■ The defendant committed murder during the course of a pre-

planned armed robbery. He was not an amateur in crime; he had been convicted of armed robbery in August 1966 and sentenced to five years probation, with the first year in the House of Correction. Considering the nature of the crimes and defendant's failure to show any signs of rehabilitation, this court has concluded that it should not alter the sentence imposed by the trial court. *People v. Jackson,* 35 Ill.2d 162.

Judgment affirmed.

DIERINGER and LEIGHTON, JJ., concur.