THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PHILLIP E. LaPOINTE, Defendant-Appellant.

Second District   No. 78-563

Opinion filed April 1, 1980.—Modified on denial of rehearing July 1, 1980.

Mary Robinson and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Phillip E. LaPointe, was charged by information with the murder of Peter Moreno, Jr., on March 7, 1978. Initially, defendant pleaded not guilty to the charge. He thereafter withdrew his plea of not guilty and, represented by appointed counsel, entered a plea of guilty to the charge; prior to accepting the guilty plea, the court advised the defendant of all of the possible penalties that could be imposed for

murder. Following a sentencing hearing, defendant was sentenced to a term of natural life imprisonment without parole. Defendant appeals only the sentence imposed.

At the outset, it is pointed out that the defendant was sentenced pursuant to section 5—8—1 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1(a)(1)), which provides in part as follows:

"* * * if the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of section 9—1 of the Criminal Code of 1961 are present, the court may sentence the defendant to a term of natural life imprisonment."

The sentencing hearing in this case involved consideration of the aggravating factors listed in 9—1(b) of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(b)) and the mitigating and aggravating factors listed in sections 5—5—3.1 and 5—5—3.2 of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, pars. 1005—5—3.1, 1005—5—3.2).

At the sentencing hearing, the Code provides that the court shall:

"(1) consider the evidence, if any, received upon the trial;

(2) consider any presentence reports;

(3) consider evidence and information offered by the parties in aggravation and mitigation;

(4) hear arguments as to sentencing alternatives; and

(5) afford the defendant the opportunity to make a statement in his own behalf." Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1.

The sentencing hearing was held on August 31, 1978. Sergeant James A. Altman of the Elmhurst police department testified for the State that he was dispatched to the area of Harrison and Chatham streets in Elmhurst, where he discovered a Checker taxicab owned by the Elmhurst Cab Company. Iside the cab was a body of a man, later identified as Peter Moreno, Jr., a cab driver for Elmhurst Cab Company. There was blood on the seat of the cab and the victim had a small wound at the base of the neck. The pockets of the victim's clothing had been turned inside out. Officer Ralph O'Connell testified that an autopsy revealed bullet wounds on the right side of the neck and head area.

David Cichelli testified for the State that on the day of the incident, defendant had showed him a gun and told him that he was going to kill a cab driver. About an hour or two later, defendant returned and told Cichelli that he had shot a cab driver for money. Defendant also commented that he had shot the cab driver because the cab driver knew who he was.

Deputy Sheriffs Leeberg, Marx and Cleveland, all testified that they

had seen defendant, while incarcerated in the Du Page County jail, wearing a T-shirt with the words, "Elmhurst Executioner" lettered on it. The shirt was not produced at the hearing; however, Marx testified that such an item could have been flushed down the toilet or burned.

Patricia Duddles testified that she had been engaged to marry the victim and was pregnant with his child. She had been living with the victim and had now lost her home and means of support when he died.

Joseph Ray, age 16, testified for the State, that about three weeks prior to the sentencing hearing, defendant had telephoned him and asked him to smuggle some "hash" into the jail; the witness said he refused. The witness stated that he had participated with defendant in the burglary that led to the latter's prior conviction; he also said defendant had tried to persuade him to assist him in a robbery of a drug store but nothing ever came of this request.

Dolores and William Malo, defendant's mother and stepfather, testified for the defendant that he had never been a violent or aggressive person, but that they had been unable to control him in the last three years due to his use of drugs. Leroy LaPointe, defendant's father, testified that defendant had visited him in New Jersey for four weeks the previous fall. He found defendant to be involved with drugs, but not aggressive or armed. Reverend Erling Jacobson testified that defendant's mother had asked him to help her son. The witness found the defendant to be suffering from rejection and depression and attempted to counsel him. The witness felt that the defendant was a "dangerous character * * * almost like a split personality" and that he should be locked up "because he is dangerous to himself and to society." On his own behalf, the defendant stated as follows:

> "At the time of this crime, no matter what Mr. Cichelli has said, I was under the influence of six hits of LSD. Normally, that is a lot for one person. Usually you can cut that in half and do it and still be really spaced out. To this day, I cannot remember if I have or have not killed Mr. Peter Moreno. If I did, I am truly sorry. I am not no killer by instinct. If I did, it was the LSD. But naturally, if I had known what I was doing, there was no way I could have killed that man. That is all I have to say, your Honor."

The trial court set the imposition of sentence for September 18, 1978.

On September 18 the trial judge stated that he had gone over a transcript of the evidence adduced on August 31, 1978, and had also considered the credibility and the demeanor of the witnesses. He found that the shooting was premeditated and deliberate on the part of the defendant and that the victim's pockets had been emptied; that the victim had been shot twice in the back of the neck. Next he determined that defendant's conduct indicated a lack of remorse. Then he pointed out that

the witness, Ray, testified that defendant had requested him to assist as a lookout while defendant robbed a drug store and further that while defendant was in jail awaiting trial in this case he had called Ray by phone and requested that "hash" be smuggled to him. The court then observed that defendant's mother had stated he had been on drugs and that Reverend Jacobson, a pastor who had tried to assist the defendant at his mother's request, stated that defendant was "dangerous to himself and society". The record contains a presentence report prepared by the Du Page County Probation Department; however, the judge made no reference to this report in announcing his findings.

The presentence report revealed that defendant's criminal record consisted of a burglary charge filed on March 15, 1977, to which defendant pleaded guilty and was placed on probation on September 30, 1977, for a term of three years; a charge of attempted burglary was also filed against the defendant on March 29, 1977, but this was nolle prossed. It further appears that defendant's natural parents were divorced when he was three years old and that his mother remarried twice thereafter; that defendant completed only two years of high school and worked at different jobs for short periods of time; his mother stated that he worked until "he had enough money to buy drugs." It further appears that defendant lived for the last 9 years with his mother and stepfather and that defendant and his stepfather had many disagreements that on occasion led to physical abuse of the defendant. Defendant was examined by a psychiatrist approximately one month after the crime involved herein and at this time the psychiatrist felt that defendant's history suggested an adolescent reaction complicated by severe hallucinogenic drug abuse; he concluded that additional psychological testing was required to further evaluate defendant's mental status. At the time of his arrest the day after the murder, a quantity of drugs was found in defendant's possession.

After reviewing the evidence, the trial judge then considered, one by one, each factor in mitigation as set forth in section 5—5—3.1(a) and concluded that none of them applied.

Next, he covered the aggravating factors enumerated in section 9—1 (b), stating that the defendant was 18 years or more of age and that he had been found guilty of murder; he then stated that the killing was intentional and in the course of committing a felony; he further found defendant to have a "significant history of prior criminal activity" and that the murder was not committed while defendant was under the influence of mental or emotional disturbance. The trial court then stated as follows:

"So, the Court, in taking into consideration the heinous nature of this crime, its brutality, its cold, calculating, cold-blooded act which is indicative of the wanton cruelty, there was indication it

was premeditated and postmeditated, the Court took into consideration the presentence investigation which more or less correlated everything that was in the transcript and the testimony on the hearing in aggravation and mitigation, and the Court has taken into consideration the arguments of counsel at the hearing in aggravation and mitigation, the fact that the defendant was over 18 years of age, and therefore, it shall be the judgment of this court that the defendant be remanded to the custody of the Sheriff of DuPage County, and thence to the custody of the Illinois Department of Corrections, where he shall serve a life sentence, without parole."

The trial court then admonished defendant in the presence of his counsel, that he had the right to an appeal, provided however, that prior to the taking of the appeal, a written motion to withdraw his guilty plea must be filed within 30 days of the judgment; and that counsel would be appointed to assist him in preparation of the motion without cost. Defense counsel then requested the trial court to order the preparation of a notice of appeal.

On September 25, 1978, defense counsel filed a notice of appeal from the judgment rendered in the case. On October 4, defense counsel filed a motion to reconsider sentence, which was subsequently amended to state that the defense counsel was acting pursuant to Supreme Court Rule 604(d) (Ill. Rev. Stat. 1977, ch. 110A, par. 604(d)). Following a hearing on October 30, 1978, the trial court ruled it had no jurisdiction to rule on the motions because of the antecedent notice of appeal.

■■ Thus, before we may consider the merits of defendant's appeal, we must ascertain whether or not the appeal is properly before us. Rule 604(d) provides that "[n]o appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to withdraw his plea of guilty and vacate the judgment." (Ill. Rev. Stat. 1977, ch. 110A, par. 604(d); *People v. Stacey* (1977), 68 Ill. 2d 261.) The State argues therefore, that defendant has waived consideration of his sentence on appeal. However, the failure of appointed counsel to file a motion to withdraw a guilty plea and vacate a judgment prior to filing defendant's notice of appeal is ineffective assistance of counsel, especially so where counsel was present before the trial court when the admonishments concerning the need for a motion to withdraw the guilty plea prior to taking an appeal were given. (*People v. Meacham* (1977), 53 Ill. App. 3d 762.) The ineffectiveness of defense counsel is further evidenced by his filing a notice of appeal prior to his motion to reconsider the sentence; consequently the merits of the latter motion were never ruled on. We will therefore consider the merits of defendant's appeal, namely, the sentence

of natural life imposed by the trial court. *People v. Young* (1977), 56 Ill. App. 3d 106.

In considering defendant's claim that the sentence imposed by the trial court is excessive, we must first determine the standard of review to be applied by this court on appeal. Supreme Court Rule 615(b)(4) states that a reviewing court may reduce the punishment imposed by the trial court; this provision was adopted from a similar provision that was in the 1963 Code of Criminal Procedure. On February 1, 1978, section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—4.1) became effective; it provides that on appeal "there is a rebuttable presumption that the sentence imposed by the trial judge is proper." The supreme court has construed Rule 615(b)(4) in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, and there it was determined that absent an abuse of discretion by the trial court a sentence may not be altered on review; this standard was recently reiterated in *People v. Lykins* (1979), 77 Ill. 2d 35, 40, 394 N.E.2d 1182, 1185.

In *People v. Choate* (1979), 71 Ill. App. 3d 267, 273, 389 N.E.2d 670, the court determined the legislative intent of section 5—5—4.1 of the Unified Code of Corrections, stating as follows:

"* * * the fact that the legislature used the term 'rebuttable presumption' rather than 'abuse of discretion' in section 5—5—4.1 indicates that it intended to change the standard to be employed in reviewing sentences."

The same question was again reviewed in *People v. Cox* (1979), 77 Ill. App. 3d 59, 63, 396 N.E.2d 59, 63, wherein the court stated as follows:

"Finally, in sentencing offenders for felony convictions the judge is required to set forth on the record his reasons for his sentencing determination. Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—4—1.

Where more detail and completeness is contained in the findings of the trial court, the process of reviewing and detecting sentencing error becomes more defined and certain."

Then going on at a later point in the opinion the court stated as follows at pages 64-65:

"Certainly error will be demonstrated if it is clear from the trial court's statements and findings that the wrong standard was applied or that inappropriate circumstances were considered in either aggravation or mitigation. A sentence while not capricious may, nevertheless, be unjustifiably disparate. * * *

* * *

* * * Thus, the error which warrants modification of the sentence must amount to more than a difference of opinion or individual sentencing philosophy. The sentencing objectives are spelled out in the Code. It is deviation from those objectives, in

view of the standards and criteria therein set forth, which constitutes error."[1]

Only recently in *People v. Carlson* (1980), 79 Ill. 2d 564, 587, our supreme court, in modifying a death sentence imposed by the trial judge, set forth the following rule:

"This court will not disturb a sentence imposed by the trial court unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose. In this State, the spirit and purpose of the law are upheld when a sentence reflects the seriousness of rehabilitative potential of the defendant."

Then the court proceeded to review and analyze the reasoning and findings of the trial judge for the purpose of ascertaining whether error had occurred in the sentencing process. With the foregoing principles in mind, we proceed to review the findings and conclusions of the trial court in this case.

The trial judge concluded that the defendant had a significant history of prior criminal activity. The defendant had been convicted of a burglary at age 17 to which he pleaded guilty and was placed on probation for a period of three years. This was the only crime for which he had been convicted. The witness, Ray, stated that defendant had requested him to assist in a robbery; also, the same witness stated defendant phoned him requesting that he smuggle some "hash" into the jail; however neither of these events materialized. Defendant's attorney objected to this evidence but the objection was overruled by the trial court. In view of the court's ruling, we can only assume that the foregoing testimony was a factor in the conclusion that defendant had a significant history of prior criminal activity. Evidence of other crimes at a sentencing hearing has been held to be improper unless there has been a conviction. (*People v. Jackson* (1968), 95 Ill. App. 2d 193, 238 N.E.2d 196; *People v. Greer* (1977), 45 Ill. App. 3d 682, 359 N.E.2d 903.) Accordingly, we find that the trial court erred in determining that defendant had a significant history of prior criminal activity.

The record also indicates that defendant's home situation had been unhappy for a considerable period of time; this resulted in termination of his high school education after two years, sporadic employment, and drug use for at least one year prior to the murder involved here. The psychiatrist who examined defendant after his arrest suggested drug-related mental problems, but this condition was never investigated

---

[1] The dissent in this case asserts that the legislature did not have the power to authorize the reduction of sentences as provided in section 5—5—4.1; however, this point has never been ruled on by our supreme court but leave to appeal has been granted.

further. In light of the foregoing evidence which is contained in the presentence report and which is undisputed, the trial judge found that defendant was not under the influence of extreme mental or emotional disturbance at the time the murder was committed. Certainly a troublesome home situation or the use of drugs is no defense to the crime that defendant committed in this case; however, these conditions should have some influence as there was no evidence that the defendant had ever before been involved with the use of violence. Accordingly, the trial court erred in finding that the foregoing circumstances had no application, particularly when sentencing a 18-year-old boy for a term of natural life without possibility of parole.

In pronouncing sentence, the trial judge noted "the heinous nature of this crime, its brutality, * * * which is indicative of the wanton cruelty * * *." Commission of the crime of murder is terrible, but the legislature did not intend that every person found guilty should serve a term of natural life. This intent is evidenced by the express terms of section 5—8—1(a)(1). The facts of this case do not disclose the "exceptionally brutal or heinous behavior indicative of wanton cruelty" that the trial judge noted. The observation of the supreme court in *People v. Crews* (1969), 42 Ill. 2d 60, 66, is relevant; in that case defendant was found guilty of the death of a two-year-old child and she was sentenced to death. On appeal, our supreme court stated:

"Society is outraged by the murder of a child, but in determining punishment for the crime, care must be taken to insure that the punishment is appropriate and just. The doing of justice must include a consideration of background and circumstances which affect punishment." (42 Ill. 2d 60, 66.)

In view of defendant's poor mental health and involvement with amphetamines, the court reduced her sentence from death to 20 to 35 years imprisonment. Our supreme court has also reduced a death sentence to imprisonment from 40 to 65 years in a murder case where defendant was an alcoholic and there was evidence that he had been drinking at the time of the murder. (*People v. Walcher* (1969), 42 Ill. 2d 159, 246 N.E.2d 256.) In the present case there was testimony that defendant was heavily involved in drugs. Defendant himself testified that he had taken six hits of LSD and was under the influence of the drug at the time of the murder. However, David Cichelli disputed the fact that defendant was on drugs when he spoke to him the morning of the murder. While, in any event, drug dependence would not excuse the defendant's act, the above-cited cases recognize that such dependence is a factor to consider in sentencing even in a murder case.

Article I, section 11, of the Illinois Constitution of 1970 provides:

"All penalties shall be determined both according to the

seriousness of the offense and with the objective of restoring the offender to useful citizenship."

The mandate of this provision provides that sentencing a criminal defendant requires a consideration of the two foregoing elements. Here the trial judge certainly considered the seriousness of the offense but, in spite of his careful review of the factors in aggravation and in mitigation, there is no indication that he made any analysis as to the possibility that defendant could at some future date be restored to useful citizenship. Certainly the sentence imposed infers that he deemed that there was no such possibility in this case; however, since a natural life sentence utterly rejects the possibility of rehabilitation, such a conclusion should have been supported by facts and findings. The trial judge did find that neither defendant's attitude nor the likelihood of the offense reoccurring mitigated the term of years he was to impose; however, at no time did the judge weigh these factors in terms of restoring defendant to useful citizenship at some time in the future. In *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233, quoted above, the court states that adequate consideration of defendant's rehabilitative potential is required by the spirit and purpose of our law.

■■ The State relies on *People v. West* (1977), 54 Ill. App. 3d 903, 370 N.E.2d 265, wherein a 16-year-old defendant was found guilty of stabbing a woman to death during a burglary attempt and was sentenced to 56 to 100 years imprisonment. The court there stated as follows:

> "Finally, defendant complains about the length of his sentence and lays emphasis on his youth and possibility of rehabilitation. The day is long past when this court, or any court, should quiver like a pole-axed blancmange at the mention of youth and rehabilitation. These are proper considerations in the fixing of sentences, but they are not the sole elements. The nature of the crime, the protection of the public, deterrence and punishment have equal status in the consideration.
>
>                 * * *
>
> The books are full of more severe sentences than that imposed in the instant case. (Compare *People v. Lockett* (1972), 6 Ill. App. 3d 867, 286 N.E.2d 809 (60 to 100 for a 22-year-old); *People v. Glanton* (1975), 33 Ill. App. 3d 124, 338 N.E.2d 30 (40 to 100 and 50 to 100 for youthful gangsters); *People v. Sprinkle* (1974), 56 Ill. 2d 257, 307 N.E.2d 161, *cert. denied* (1974), 417 U.S. 935, 41 L. Ed. 2d 239, 94 S. Ct. 2650, (75 to 90 for 15 and 14-year-olds).) But sentencing is emphatically an individual matter and prior authority is of little assistance." (54 Ill. App. 3d 903, 909-10, 370 N.E.2d 265, 270-71.)

We agree with the State that these other elements must be considered

equally with the possibility of rehabilitation. However, in *West*, and the cases cited therein, the defendants received lengthy sentences, but those sentences did provide the promise of release at some time, while defendant in the case before us, unless he receives executive clemency at some point, has no such promise and will remain confined the rest of his natural life.

■■ The State also contends that article I, section 11 was not intended to be a restriction on the court's authority to impose such punishments as the death penalty or natural life imprisonment. Obviously, where the death penalty is imposed there has been a rejection of the possibility of rehabilitation. Further, we can conceive of situations where a sentence of natural life imprisonment without parole would be appropriate; however, the defendant here was 18 years of age when the murder was committed. His prior record consisted of one conviction of burglary wherein he had pleaded guilty and was sentenced to three years' probation. There was also testimony that defendant was not a violent or aggressive person prior to the act in question and that he needed some kind of help and was heavily involved in the use of drugs.

We hold that the imposition of a sentence of natural life without parole is not an appropriate disposition in this case. The standards of both Supreme Court Rule 615 (b)(4) and the provisions of section 5—5—4.1 of the Code of Corrections suggest that the sentence of the trial court be reduced; however, there were aggravating factors present which require the imposition of an extended term pursuant to section 5—8—2 of the Criminal Code.

Therefore, we reduce defendant's sentence from natural life imprisonment without parole to a term of imprisonment for 60 years. Deciding the case as we do, we need not reach the other issues raised by the defendant.

The judgment of the circuit court of Du Page County is affirmed as modified.

Affirmed as modified.

NASH and LINDBERG, JJ., concur.