THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM HUDSON, JR., Defendant-Appellant.

Third District    Nos. 80-411, 80-410 cons.

Opinion filed April 28, 1981.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HEIPLE delivered the opinion of the court:

On December 17, 1979, an indictment was filed against the defendant, William Hudson, Jr., charging him with one count of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1)) and six counts of attempt murder (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a)). One of the attempt murder

victims died as a result of her injuries, and the defendant was subsequently indicted for her murder.

The defendant was 16 years old on the date of the instant offenses. Following a hearing, the trial court granted the State's motion to try the defendant as an adult.

On April 11, 1980, the defendant, acting against the advice of his counsel, pleaded guilty to the two murder charges. The remaining attempt murder charges were dismissed. A sentencing hearing was held on May 16, 1980. At the hearing six witnesses testified in aggravation and one in mitigation. At the conclusion of the hearing, the defendant was sentenced to concurrent terms of natural life imprisonment on each murder conviction.

This appeal followed the denial of the defendant's motion to withdraw his guilty pleas and to vacate the judgment against him. Several issues are raised by the defendant: (1) whether the trial court properly denied the defendant's motion to withdraw his guilty pleas; (2) whether the trial judge properly exercised his discretion in determining that the murders committed by the defendant were accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty; (3) whether the trial judge erred in not considering the possibility of consecutive sentences; (4) whether the statute authorizing natural life imprisonment, as applied in this case, denies the defendant equal protection of the law; (5) whether the statute authorizing natural life imprisonment contravenes the penal goal of rehabilitation as expressed in article I, section II of the Illinois Constitution of 1970; (6) whether the natural life imprisonment statute violates the equal protection and due process provisions of the State and Federal constitutions; and (7) whether, under all the circumstances of this case, the defendant's sentence constitutes an abuse of discretion.

Responding to the first issue raised, we affirm the trial court's denial of the defendant's motion to withdraw his guilty pleas and vacate the judgment against him. The defendant contends that his guilty pleas were not knowingly entered because the trial judge failed to adequately and accurately admonish him of the maximum sentence possible. The defendant further alleges that, as a result, he had no real understanding of the sentence of natural life imprisonment and was confused by the trial judge's references to the mandatory three-year supervised release term which follows a sentence of imprisonment for murder. (See Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(2)(d)(1).) He contends that these references led him to believe that a sentence of natural life, like every other sentence, contemplated the possibility of parole. In addition, fellow inmates of the defendant in the Kankakee County jail informed him that parole on a life sentence could come after 11 years and three months.

It is obvious that the defendant had information prior to his sentencing hearing which led him to believe that parole was a possibility when serving a sentence of life imprisonment. Such was indeed the case under the law prior to the Unified Code of Corrections. Ill. Rev. Stat. 1979, ch. 38, par. 1003—3—3(a)(2).

The defendant is correct in his assertion that the trial judge never specifically indicated that natural life imprisonment under section 5—8—1(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(1)) did not include the possibility of parole. However, the admonishments by the trial judge did include repeated references to the idea that the defendant might be sent to prison for his natural life:

> "Do you understand that as I read the sentencing provisions that it would be possible for you to be sentenced to your natural life in prison, * * * [?] The statute says that for murder a term shall not, shall, shall be not less than 20 years nor more than 40 or if the court finds that the murder was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in section (b) of section 19—1 [*sic*] [Ill. Rev. Stat. 1979, ch. 38, par. 9—1] are present the court may sentence the defendant to a term of natural life. * * * [I]t is possible under the double murder theory that you could be sentenced to your natural life in the penitentiary. * * *
>
> * * * It seems to me that if you are taking a chance of spending the rest of your life in prison that I think you ought to wait a week or ten days more and at least get the reports [psychiatric evaluation]. Or at least think about it over the weekend. You don't want to delay this any more? You are shaking your head no. I don't— does that mean you don't want to plead guilty and you want to wait and think about it?
>
> DEFENDANT HUDSON: I am pleading guilty.
>
> THE COURT: You still want to plead guilty even knowing that there is a possibility you could, that you could fall under any of 3 sentences, take 20 to 40, 40 to 80, or natural life?
>
> DEFENDANT HUDSON: Yes.
>
> THE COURT: Mr. Hudson [,] do you have any question at all about what the possible penalty is in this case, in these cases?
>
> DEFENDANT HUDSON: You done told me.
>
> THE COURT: Well, then you have no question, right? Now, William [,] knowing that do you still want to plead guilty to the charge of murdering James Hudson, and Evelyn Clark?
>
> DEFENDANT HUDSON: I do."

■■■ The withdrawal of a guilty plea is not a matter of right (*People v.*

*Tarbill* (1977), 47 Ill. App. 3d 286, 361 N.E.2d 1178), and will be granted, in the trial court's discretion, only after the defendant carries the burden of proof by showing the withdrawal is necessary to correct a manifest injustice based on the facts of the case. (*People v. Linden* (1975), 27 Ill. App. 3d 45, 325 N.E.2d 809.) A defendant's belief or hope that he may receive a milder sentence by pleading guilty is not a basis for withdrawing his guilty plea. (*People v. Taylor* (1977), 48 Ill. App. 3d 925, 363 N.E.2d 643.) In the instant case, we find the trial judge's admonitions to the defendant sufficient to adequately inform him of the possible sentences facing him. Therefore, we find no abuse of discretion in the trial court's denial of the defendant's motion to withdraw his guilty plea.

The second issue raised by the defendant, whether the trial judge properly found that the murders committed by the defendant were accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, requires a recital of the underlying facts.

■■ On November 26, 1979, the defendant became enraged when his grandfather refused to give him permission to use a pickup truck. He dragged the family dog outside and began to strangle it. The defendant's brother warned the defendant's father, who intervened and rescued the dog. In retaliation, the defendant obtained a knife and threatened to kill his brother, but the defendant's father and uncle dissuaded him. The defendant then entered his grandfather's trailer, grabbed a shotgun, loaded it, and returned and shot his brother. He also shot his father.

Looking for his uncle, the defendant went to his aunt's house and kicked down the door. The defendant saw his aunt's sister lying on a couch and talking on the telephone. Believing she was calling the police, the defendant shot her in the stomach. Everyone else present in the aunt's house ran and hid.

The defendant found his cousin, James Hudson, hiding in a bedroom closet and ordered him to leave the closet and to show him where the family kept their .22-caliber rifle. James led the defendant to the rifle, whereupon the defendant shot James in the heart with the shotgun.

The defendant then loaded the rifle and rounded up three other cousins, the oldest of whom was 12 years of age. After lining them up against the wall, he shot each of them and once again shot his aunt's sister, this time using the rifle.

At this time, the police arrived on the scene. The defendant shot at them and they returned his fire, but the defendant's weapon jammed and he was unable to continue firing. Two of the young cousins wounded by the defendant then threw his guns out, and the defendant surrendered.

While transporting the defendant to the police station, the officers heard him brag and laugh about his exploits. He volunteered the statement that he had killed his brother and stated that when he was free, he

would kill "all of them." He later told an officer that if he could have found more ammunition, he would have killed them all and had a good shoot out with the police.

The defendant was taken to a hospital for treatment of his wounds. While there, he inquired several times of hospital personnel how many of the victims he had killed and stated that when he was free he would kill the rest of them.

While confined to the county jail, the defendant caused a number of problems. He flooded his cell and set fire to his mattress, pillow and blanket. While the officers were attempting to extinguish the fire, the defendant kicked a trustee in the throat. When the officers restrained him, the defendant threatened to kill all of them.

In sentencing the defendant to natural life imprisonment, the trial judge specifically found that the defendant's conduct exhibited exceptionally brutal and heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(b) and 1005—8—1(a)(1).) We find no reason to disturb this finding. The defendant's conduct cannot be characterized as anything less than exceptionally brutal.

*People v. LaPointe* (1980), 85 Ill. App. 3d 215, 407 N.E.2d 196, the only case the defendant has cited in which a sentence of natural life imprisonment was reduced, is clearly distinguishable. In *LaPointe*, the defendant was convicted of killing only one person, not two as was the present defendant. There was evidence in *LaPointe* that the defendant, who was not ordinarily a violent or aggressive person, was under the influence of drugs at the time of the murder. The defendant in the instant case was shown to be a violent person and was not under the influence of drugs or alcohol at the time of the murders. In addition, the defendant in the present case bragged about his exploits, while the defendant in *LaPointe* expressed remorse for the victim's death.

■ The defendant next contends that the trial judge erred in failing to consider the possibility of consecutive sentences because the judge did not mention this possibility at the sentencing hearing. This contention is without merit. Because the judge did not mention consecutive sentences does not mean he did not consider them. Moreover, the judge is not obligated to mention at the sentencing hearing everything that is running through his mind. Defendant had an opportunity to request consecutive sentences. Not surprisingly, he did not do so.

■ The defendant's fourth argument is that the sentencing provisions of the Unified Code of Corrections unconstitutionally deny him equal protection of the law by permitting the imposition only of sentences in the range of 20 to 40 years' imprisonment and natural life imprisonment for offenders, such as the defendant, who are younger than 17 years of age at the time of the offense, while defendants who are at least 17 years old at

the time of the offense may also be sentenced under the extended-term provisions to a term of 40 to 80 years. Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.2 and 1005—8—1(a)(1).

His argument in this regard is without merit. The constitutional entitlement to equal protection is not offended in this situation. Many sentencing alternatives differ as between juveniles and adults. This is a proper area for legislative discretion and does not deprive this defendant of any substantial right.

The defendant's fifth argument is that the natural life sentencing provision violates article I, section II of the Illinois Constitution of 1970 by not requiring the trial court to make a specific finding regarding the defendant's lack of rehabilitative potential. This argument and the defendant's sixth contention, that the natural life statute violates the equal protection and due process provisions of the State and Federal constitutions, have been discussed and rejected in a number of recent opinions from the various districts of the appellate court. (See *People v. Darnell* (3d Dist. 1981), 94 Ill. App. 3d 830, 419 N.E.2d 384; *People v. Smith* (2d Dist. 1980), 91 Ill. App. 3d 438, 414 N.E.2d 1281; *People v. Merchel* (5th Dist. 1980), 91 Ill. App. 3d 285, 414 N.E.2d 804; and *People v. Nobles* (4th Dist. 1980), 83 Ill. App. 3d 711, 404 N.E.2d 330, *appeal denied* (1980), 81 Ill. 2d 597.) We adopt the reasoning found in those cases, and reject the instant defendant's arguments.

Lastly, the defendant argues that under all the circumstances of this case, his sentence constitutes an abuse of discretion and should be reduced. We disagree. A review of the circumstances surrounding the instant offenses and the defendant's character and history convinces us that a sentence of natural life imprisonment was reasonable and appropriate. Accordingly, under the authority of *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541, we find no abuse of the trial court's discretion in sentencing the defendant.

Taken with this case is the State's motion for leave to respond to a new issue raised in the defendant's reply brief. In response to the State's argument that the defendant had waived his challenge to the constitutional application of the extended term and natural life sentencing statutes, the defendant in his reply brief claimed that his trial counsel's failure to specifically raise that issue constituted ineffective assistance of counsel. In *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 412 N.E.2d 721, this court allowed a defendant to respond in his reply brief to an argument of waiver first made in the State's initial brief. Fundamental fairness requires that we permit the State to respond to the new issue. Accordingly, the State's motion is allowed. However, our determination that the defendant's constitutional rights were not violated precludes further discussion of the State's motion.

For the foregoing reasons, the judgment of the Circuit Court of Kankakee County is affirmed.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.