THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES WALKER, Defendant-Appellant.

Third District No. 3—84—0551

Opinion filed August 27, 1985.

Joseph C. Polito, of Kozlowski, Polito & Feeley, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant, James Walker, appeals from his conviction for the felony murder of a cab driver and his sentence of life imprisonment.

According to the evidence adduced at defendant's jury trial, he and Xavier D. Williams were together about 5 or 6 p.m. on the evening of March 16, 1984, an both men were without funds. They decided to call a cab and rob the cab driver. Walker decided that Yellow Cab should be called because it employed white drivers. (Walker and Williams are black.) When the cab came, the two men got into the back seat of the cab, with Walker sitting behind the driver. They gave the driver a fictitious address in Joliet. While driving around, the men had the driver stop, and Walker brought out the sawed-off shotgun he had concealed under his coat. Williams got out of the car on the passenger side and started to walk around the back of the car in order to get in and drive. As he rounded the back of the cab, he heard a shot. He looked into the front seat and saw the gruesome sight of the cab driver's head blown open and blood splattered all over the front window and interior of the cab. Williams immediately began to run. Walker remained in he cab for a short while and then he, too, ran from the scene. The two men went to the home of a mutual friend and later that night they encountered other friends, some of whom they told that Walker had shot a cab driver. Walker and Williams were both arrested a few days later.

Both Williams and Walker gave statements to the police in which each confessed their participation in the killing of the cab driver. Their statements agreed in all important particulars concerning their plan, purpose, and actions. Williams indicated that he had merely wanted to commit a robbery, not a killing, and that he wanted to lock the driver in the trunk afterwards. For that reason, he had worn a cap and a scarf over his face to conceal his identity. Williams quoted Walker as saying he would have to kill the cab driver because he did not have a ski mask to cover his face and he

did not want to be picked out in a lineup. Walker did not mention that Williams had not wanted to kill the driver but did agree that he had shot the driver so that he could not be identified afterwards. At the time of the crime, Walker was 17 years old and Williams was 16 years of age.

Walker and Williams were jointly indicted for murder and for felony murder. Both defendants joined in a motion for severance of their trials, but the trial judge denied the motion, and the two were jointly tried. The jury returned a verdict of guilty on the charge of felony murder as to both defendants.

On appeal, Walker asserts three errors: (1) denial of the motion for a severance and refusal to give defendant's proposed instruction (Illinois Pattern Jury Instruction (IPI), Criminal No. 3.08 (2d ed. 1981)); (2) systematic exclusion of blacks from the jury; (3) imposition of a life sentence. We affirm.

■ Walker contends that he was denied a fair trial by the court's refusal to sever his trial from that of Williams since the evidence included a lengthy statement by Williams which placed the sole responsibility for killing the cab driver on Walker and which included several statements harmful to Walker, such as that Walker had been proud of the shooting and that Walker had said he wanted to kill again. As a general rule, defendants jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Lee* (1981), 87 Ill. 2d 182, 429 N.E.2d 461.) In order to show prejudice, a defendant must be able to demonstrate with specificity an antagonism in the defenses. (*People v. Sanford* (1983), 116 Ill. App. 3d 834, 452 N.E.2d 710.) Where codefendants have both made extrajudicial, inculpatory statements and where both decline to testify in their own behalf, a defendant may claim that he was denied his sixth amendment right to confront his accusor when the statement of his codefendant is introduced in evidence at the joint trial. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) However, the Illinois Supreme Court has held that no *Bruton* violation occurs where the complaining defendant has himself made similar inculpatory admissions. *People v. Bassett* (1974), 56 Ill. 2d 285, 307 N.E.2d 359.

The United States Supreme Court, in *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, recognized an exception to the *Bruton* rule when it held that the admission of "interlocking confessions" with proper limiting instructions conforms to the requirements of the sixth and fourteenth amendments to the

United States Constitution. In other words, where both defendants make extrajudicial admissions of guilt that agree in all material respects, one defendant will not be prejudiced by the admission into evidence of his codefendant's statement with an instruction to the jury that each confession can only be used against the defendant who gave it. In *People v. Sanford* (1983), 116 Ill. App. 3d 834, 452 N.E.2d 710, the reviewing court held that two statements were "interlocking," even though not identical, where they agreed on such crucial facts as time, location, felonious activity, and awareness of the overall plan or scheme.

In the case before us, the statements of the two defendants were in agreement as to the essentials of time, location, criminal activity, and mutual understanding of the plan to rob a cab driver. Both Walker and Williams stated that Walker had expressed an intention in advance to kill the victim to prevent him from identifying Walker later. The only serious point of disagreement was whether Williams tried to talk Walker out of the killing, and that can hardly be considered a material fact under the circumstances of this case. We hold that the trial court correctly ruled the two confessions to be interlocking in this case and that the admission of Williams' confession did not violate Walker's sixth amendment right to confrontation.

■ In a related argument Walker also contends that it was error not to give the jury the limiting instruction specified in such cases as *Parker v. Randolph* and *People v. Sanford,* that the confessions of one defendant could not be considered as evidence of guilt against the other. Here the trial court refused to give IPI Criminal 2d No. 3.08, tendered by defendants, which advises: "A statement made by one defendant may not be considered by you against any other defendant." The State responds that such an instruction was not necessary because the confessions came within an exception to the hearsay rule as an admission by a co-conspirator uttered in furtherance of the conspiracy or joint venture. We think it clear that the defendants' statements were made after the criminal joint venture was completed. Some parts of each confession included statements made by the participants on the day of the crime and were in furtherance of the criminal plan at the time made, but in our view, this is not what is intended by the "co-conspirator exception" to the hearsay rule. IPI Criminal No. 3.08 should have been given in this case, but we are of the opinion that the failure to give the instruction did not affect the outcome of the case. The jury had heard defendant Walker's confession to the same criminal acts that were

recounted by Williams—planning an armed robbery of a cab driver, preparation and loading of the weapon, calling a cab, expecting that it would be necessary to kill the driver to avoid identification, the brutal shooting of the driver, and the flight from the scene. Walker could hardly have been prejudiced by the admission of Williams' statement when his own was equally incriminating. Any error was, therefore, harmless.

■■ Walker also contends that his constitutional right to a jury which represents a cross-section of the community was violated when the State challenged three blacks on one panel of prospective jurors. Walker cites *McCray v. Abrams* (2d Cir. 1984), 750 F.2d 1113, as holding that the trial court must determine the question of systematic exclusion on the basis of race by examining the acts or practices in the instant case and that peremptory challenges may not be exercised solely on the basis of race. This issue need not be considered at length, because we are bound to follow the decision of the Illinois Supreme Court in *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202, holding that a constitutional issue arises only where there has been a systematic exclusion on the basis of race by peremptory challenges *in case after case.* (Also, *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824.) Here the trial judge expressly found that blacks had been included in juries in other criminal cases in his court. Defendant has not challenged that finding; hence, no constitutional violation has been shown.

■ Defendant Walker also challenges the imposition of a sentence of life imprisonment. First, Walker argues that the court failed to consider the possibility of an extended term under section 5—5—3.2(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(2)), which provides that one reason for imposing an extended term sentence may be the fact that a felony offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Defendant cites no authority for his position that the court must state that it considered and rejected an extended term before imposing a life sentence. Silence does not mean that the court failed to consider available alternatives. (See *People v. Hudson* (1981), 95 Ill. App. 3d 350, 420 N.E.2d 271.) In any event, any such issue was waived when Walker failed to suggest such an alternative to the trial judge. *Cf. People v. Davis* (1982), 93 Ill. 2d 155, 442 N.E.2d 855.

Secondly, Walker claims that none of the criteria for imposing a life sentence were met in this case. Section 5—8—1(a)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—

1(a)(1)) provides that natural life imprisonment may be imposed if "the court finds that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of section 9—1 of the Criminal Code of 1961 are present ***." The trial judge expressly found that the murder was accompanied by exceptionally brutal or heinous behavior and that the victim was killed by Walker in the course of another felony. The latter finding is one of the factors listed in section 9—1 of the Criminal Code. Walker argues that the court must find that he was 18 at the time of the crime before it can consider any of the aggravating factors listed in section 9—1(b), but this contention is based on a misreading of the statute. Section 9—1(b) provides that, in order for a sentence of death to be imposed, a defendant must be 18 or more at the time of the offense and one of the aggravating factors must be present. No such age requirement has been provided for the imposition of a life sentence. (See, e.g., People v. Darnell (1981), 94 Ill. App. 3d 830, 419 N.E.2d 384.) Furthermore, the finding that the crime was brutal or heinous was sufficient to support a life sentence without regard to the presence of a section 9—1 aggravating factor.

Walker also suggests that this crime was not "brutal or heinous" since death was instantaneous and did not involve torture of the victim. He would have us ignore the fact that the murder was casually undertaken, was horribly mutilating to the body of the victim, and was performed cold-bloodedly without any provocation, real or imagined, on the part of the victim. No one can say what mental and physical suffering the victim incurred during his last few moments of life. We hold that the trial court did not err in sentencing Walker to life imprisonment.

For the reasons stated, we affirm the conviction and sentence entered in the circuit court of Will County.

Affirmed.

HEIPLE, P.J., and STOUDER, J., concur.