# Illinois Official Reports

## Appellate Court

---

### *People v. Walker*, 2018 IL App (3d) 140723-B

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WALKER, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0723 |
| Filed<br>Rehearing denied | March 26, 2018<br>April 24, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 84-CF-190; the Hon. Robert P. Livas, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Children & Family Justice Center, Bluhm Legal Clinic, of Northwestern Pritzker School of Law (Shobha L. Mahadev and Scott F. Main, of counsel, and Lari Dierks, Margaret Houseknecht, and Robyn Bernstein, law students), and Angela M. Weis, of Sidley Austin LLP, both of Chicago, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Bruce A. Boyer, of Chicago, and Marsha L. Levick, of Philadelphia, Pennsylvania, for *amicus curiae* Juvenile Law Center. |

Panel        JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Justice Wright concurred in part and dissented in part, with opinion.

## OPINION

¶ 1  In July 1984, a Will County jury convicted defendant, James Walker, of felony murder (Ill. Rev. Stat. 1983, ch. 38, ¶ 9-1). He was 17 years old at the time of the offense. The court sentenced him to natural life imprisonment without the possibility of parole. Defendant raised three issues, including his sentence, on direct appeal; this court affirmed. *People v. Walker*, 136 Ill. App. 3d 177 (1985). The Illinois Supreme Court denied defendant's petition for leave to appeal. *People v. Walker*, 111 Ill. 2d 563 (1985).

¶ 2  In June 2013, defendant filed a postconviction petition. Defendant argued that at his sentencing hearing, the trial court did not consider his status as a juvenile and the attendant characteristics of his youth at the time of the offense. Citing *Miller v. Alabama*, 567 U.S. 460 (2012), in support, defendant alleges his constitutional rights were violated. Defendant also claimed his sentence violated the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. Upon the State's motion, the trial court dismissed defendant's petition.

¶ 3  Defendant appeals the dismissal of his postconviction petition, arguing (1) his sentence violates the United States Constitution, (2) his sentence violates the proportionate penalties clause of the Illinois Constitution, and (3) as it applies to juveniles, Illinois's natural life sentencing scheme is unconstitutional. In addition to countering defendant's claims, the State asserts that defendant's postconviction petition is untimely.

¶ 4               BACKGROUND

¶ 5  The defendant murdered Charles Davis during an attempted armed robbery. Defendant and his codefendant, Xavier Williams, are African American. In March 1984, defendant and Williams were minors—17 and 16 years old, respectively.[1] They decided they needed money and, in order to get some, they should rob a cab driver. Defendant called Davis's taxi company specifically because he thought they were known to employ "white drivers." *Walker*, 136 Ill. App. 3d at 178. Davis was, in fact, white.

¶ 6  Davis picked up defendant and Williams in his taxicab. Defendant sat directly behind Davis in the cab with a loaded, sawed-off shotgun concealed under his coat. After a brief drive, defendant produced the shotgun and demanded that Davis stop the cab. Williams exited the rear passenger side of the cab, intending to take over as the driver. Before Williams reached the driver's side door, defendant fired the shotgun. Upon seeing the carnage that resulted from defendant shooting Davis in the back of the head with a shotgun at point-blank range, Williams fled; defendant followed.

---

[1]In 1984, any minor over the age of 14 charged with murder or armed robbery was mandatorily prosecuted as an adult pursuant to the Criminal Code of 1961. Ill. Rev. Stat. 1983, ch. 37, ¶ 702-7(6)(a).

¶ 7 Defendant and Williams both went to the home of a mutual friend where they encountered friends throughout the night. Each separately told friends that defendant killed Davis. Defendant and Williams were arrested a few days later. Each provided the police with a confession that mirrored the other's account of events in most respects. The significant difference between their confessions was their professed intent. Williams said he concealed his face with a cap and scarf, intending merely to rob the driver. Defendant said he was aware he had no means to conceal his face going into the robbery and killed Davis so that he could not later identify him.

¶ 8 Defendant and Williams were indicted for murder and felony murder and tried jointly. A jury found them both guilty of felony murder. At sentencing, the trial court discussed defendant's criminal record—containing both adult dispositions and juvenile records of adjudication—and the fact that defendant received counseling "for a variety of family, social, sexual and educational problems." The trial court sentenced defendant to a discretionary natural life imprisonment without parole and Williams to 35 years' imprisonment.

¶ 9 On direct appeal, defendant contested, *inter alia*, the imposition of his life sentence. *Id.* at 181-82. Most notably, defendant argued that none of the statutory requirements for imposing a life sentence were met in his case. This court rejected all of defendant's arguments and affirmed his conviction. Before concluding, this court noted:

> "Walker also suggests that this crime was not 'brutal or heinous' since death was instantaneous and did not involve torture of the victim. He would have us ignore the fact that the murder was casually undertaken, was horribly mutilating to the body of the victim, and was performed cold-bloodedly without any provocation, real or imagined, on the part of the victim. No one can say what mental and physical suffering the victim incurred during his last few moments of life. We hold that the trial court did not err in sentencing Walker to life imprisonment." *Id.* at 182.

¶ 10 Defendant filed a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)) in June 2013. He argued his life sentence was unconstitutional under *Miller* and violated the proportionate penalties clause of the Illinois Constitution. See *Miller*, 567 U.S. 460; Ill. Const. 1970, art. I, § 11. In August of that year, the trial court advanced defendant's petition to the second stage of postconviction proceedings. The State filed a motion to dismiss, which the trial court granted. The trial court found that the original trial court had considered defendant's youth and other relevant factors before sentencing. In so doing, the trial court noted the explicit discussion on the record of defendant's age and life circumstances during defendant's sentencing hearing. The trial court also declined to extend *Miller* to defendant's case, reasoning that *Miller* applies to mandatory life sentences, not discretionary ones. *Miller*, 567 U.S. 460.

¶ 11 Defendant appeals the dismissal of his postconviction petition, arguing his sentence violates both the eighth amendment to the United States Constitution, contrary to the Supreme Court's ruling in *Miller*, and the proportionate penalties clause of the Illinois Constitution. Additionally, defendant argues that, as it applies to juveniles, Illinois's natural life sentencing scheme is *per se* unconstitutional. The State rebuts defendant's arguments and further asserts that defendant's postconviction petition is untimely. We affirmed in an opinion filed on April 25, 2016. The supreme court issued a supervisory order on November 22, 2017, directing us to consider the effect of *People v. Holman*, 2017 IL 120655, on defendant's *Miller* claim.

## ANALYSIS

We review the trial court's dismissal of a postconviction petition in the second stage *de novo*. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "[I]ssues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered forfeited." *People v. Davis*, 2014 IL 115595, ¶ 13 (citing *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009)).

The Post-Conviction Hearing Act provides three stages to adjudicate postconviction petitions. In the first stage, only petitions that are "frivolous or *** patently without merit" may be dismissed. 725 ILCS 5/122-2.1(a)(2) (West 2012). The State may file a motion to dismiss a postconviction petition at the second stage. *Id.* § 122-5. In order to survive dismissal, the defendant must make a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001).

Defendant's petition asserted two claims: (1) *Miller* requires defendant's sentence to be vacated and that he be resentenced and (2) defendant's sentence violates the proportionate penalties clause of the Illinois Constitution. Defendant's arguments on appeal include the additional assertion that Illinois's natural life sentencing scheme is *per se* unconstitutional, as it applies to juveniles. The record indicates that defendant declined to amend his petition in the trial court to include the latter argument. As such, we need not address it. "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2012).

### I. The State's Untimely Petition Argument

The State argues defendant violated the Post-Conviction Hearing Act's time limitations (*id.* § 122-1(c)), forfeiting all claims asserted in his petition. Defendant asserts that the notion that juveniles are less culpable for their actions than adults is a recent revelation and, therefore, his petition is timely. More precisely, defendant claims this strand of thought has only been available to criminal defendants since the Supreme Court decided *Miller*. We disagree.

Where, as here, the petitioner is not under sentence of death and has not petitioned for writ of *certiorari*, the Post-Conviction Hearing Act prohibits filing a postconviction petition more than six months after the conclusion of proceedings "unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." *Id.*; see *People v. Paleologos*, 345 Ill. App. 3d 700, 707-08 (2003).

A juvenile's relative lack of fault, in comparison to their adult counterpart, is not an intellectual breakthrough that came to light solely in the wake of *Miller*. Defendant's position on this point is undermined by cases he relies upon in his brief. *Roper v. Simmons*, 543 U.S. 551, 570 (2005), is the most prominent example (noting that juveniles have greater rehabilitative potential than adults). In fact, the *Roper* Court explicitly noted the following:

> "[D]ifferences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders. ***
>
> * * *
>
> In *Thompson*, a plurality of the Court recognized the import of these characteristics with respect to juveniles under 16 ***. [Citation.] *We conclude the same reasoning applies to all juvenile offenders under 18*." (Emphasis added.) *Id.* at 569-70.

Given the language in *Roper*, the argument now asserted by the defendant was available to him at least as early as 2005. Therefore, his petition is untimely, and we affirm the trial court's dismissal. We do not believe that *Holman* is relevant to the timeliness issue.

¶ 20                    II. Defendant's *Miller v. Alabama* Argument

¶ 21    Even were his petition timely, defendant's arguments fail. *Miller* holds that mandatory life sentencing for juvenile offenders must be vacated and the defendant must be resentenced at a discretionary sentencing hearing. The trial court has already provided defendant with the relief to which defendant is entitled. In *Miller*, the United States Supreme Court held that mandatory life sentences for defendants under the age of 18 violates the eighth amendment. *Miller*, 567 U.S. at 489; U.S. Const., amend. VIII. The Illinois Supreme Court further held that *Miller* applies retroactively. *Davis*, 2014 IL 115595, ¶ 34. This reasoning was recently affirmed by the Supreme Court. *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016). *Miller* and its progeny hold that the mitigating factors inherent in being a juvenile must be considered before sentencing someone under the age of 18 to life in prison at the time of the offense. *Miller*, 567 U.S. at 477. That is, no mandatory life sentences for juveniles.

¶ 22    The defendant in this case was not given a mandatory sentence. Ergo, *Miller* does not apply. Defendant asserts, however, that the trial court did not consider his youth and other relevant factors before sentencing him to life in prison without parole and, therefore, his sentence is unconstitutional. We find two problems with this argument.

¶ 23    First, the record belies the argument. The transcript from defendant's sentencing hearing demonstrates the trial court was aware of defendant's age and life circumstances at the time of his offense. The trial court discussed defendant's criminal record with trial counsel, which contained recent juvenile records of adjudication. Defendant's presentence investigation report indicated that he received counseling "for a variety of family, social, sexual and educational problems."

¶ 24    After reviewing the record, we conclude there is no reasonable possibility that the trial court, during defendant's sentencing hearing, was unaware of, or failed to consider, the fact that defendant was 17 years old with a grossly unstable living environment when he committed murder.

¶ 25    The trial court imposed a discretionary sentence after a full sentencing hearing. *Miller* is inapposite. The defendant is seeking on appeal that which he already received—a proper sentencing hearing. Thus, defendant failed to make a substantial showing of a constitutional violation at the hearing on the motion to dismiss his postconviction petition as required. *Edwards*, 197 Ill. 2d at 246.

¶ 26                              III. Supervisory Order

¶ 27    In November 2017, the supreme court issued a supervisory order vacating our prior judgment and directing us to review defendant's *Miller* claim in light of *Holman*, 2017 IL 120655. We note that neither the supreme court's supervisory order nor *Holman* requires us to review whether defendant timely filed his petition. We do not believe that defendant's *Miller* claim affects our ultimate judgment. Nonetheless, we reviewed it and now find that *Holman* supports our original opinion.

¶ 28     In *Holman*, the supreme court held that courts must consider minor defendants' youth and its "attendant characteristics" before imposing a discretionary life sentence. *Id.* ¶ 46. These characteristics include the defendant's age and maturity level, family and home environment, degree of participation in the crime and susceptibility to peer pressure, incompetence, and prospects for rehabilitation. *Id.*

¶ 29     A jury found that Holman murdered an 82-year-old woman while burglarizing her home. The presentence investigation report (PSI) stated Holman's age, and the attorneys highlighted his age during argument. *Id.* ¶ 48. The PSI included three psychological reports; none of the reports indicated that Holman was "immature, impetuous, or unaware of risks." *Id.* The reports concluded that he was mildly retarded and susceptible to peer pressure; however, his psychiatrist and the court found him competent. *Id.* The PSI also included Holman's family background.

¶ 30     Based on the trial evidence, the court concluded that Holman was "intimately involved with the offense." *Id.* The court came to this conclusion despite the parties' disagreement as to whether Holman or his cohort pulled the trigger. Finally, the court cited a parole officer's report, which indicated that Holman had " 'no predilection for rehabilitation.' " *Id.*

¶ 31     The supreme court found that the trial court considered evidence pertaining to the five attendant characteristics of youth during the sentencing hearing. The court also noted that "[Holman] had every opportunity to present evidence to show that his criminal conduct was the product of immaturity and not incorrigibility." *Id.* ¶ 49. He presented no mitigating evidence. Based on the record, the court found that Holman's sentence "passe[d] constitutional muster under *Miller*." *Id.* ¶ 50.

¶ 32     In defendant's case, his PSI and counsel clearly informed the trial court that defendant was 17 when he committed the offense. Defendant's PSI discussed his family and personal background—defense counsel described defendant as "basically a creature of the streets" during the hearing. The PSI and counsel also discussed defendant's prior family counseling "for a variety of family, social, sexual and educational problems."

¶ 33     Some evidence in this case was even more aggravating than that in *Holman*. No evidence indicated that defendant was susceptible to peer pressure or unintelligent. Defendant unquestionably pulled the trigger. The PSI indicated that he obtained his general equivalency diploma (GED) and made no mention of low intelligence or cognitive disabilities.

¶ 34     As in *Holman*, defendant had every opportunity to present mitigating evidence to dispute this conclusion—he presented none. The trial court determined that defendant's actions were not the product of immaturity. Knowing defendant's age and background, the trial court opined that defendant "would kill for the joy of it and seriously does not care at all about a human life, it makes no difference to him whatsoever." This statement clearly reflects the trial court's opinion that defendant showed no potential for rehabilitation.

¶ 35     We see no dispositive difference between this case and *Holman*. In both cases, neither the trial evidence nor the PSI showed that the defendants were immature, unaware of risks, or incompetent. Both defendants were intimately involved in egregious crimes and showed no remorse or prospect of rehabilitation. After review, we still find that defendant's natural life sentence "passes constitutional muster under *Miller*." *Id. Holman* does not require a different result.

¶ 36                    IV. Defendant's Proportionate Penalty Clause Argument

¶ 37    Defendant also argues his discretionary sentence of life without parole violates the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. This clause mandates that penalties "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." *Id.* In other words, a criminal penalty must be proportionate to the offense committed. *People v. Grant*, 2014 IL App (1st) 100174-B, ¶ 41. Defendant's proportionate penalties clause argument is both untimely and meritless.

¶ 38    As discussed previously, defendant's postconviction arguments must be brought before the court within six months of the conclusion of proceedings "unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2012). The *People v. Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*), decision was not a watershed in proportionate penalty clause jurisprudence. The arguments Leon Miller relied upon in his case were available to the defendant in this case at trial and within six months of the conclusion of his proceedings. Even assuming *Leon Miller* did usher in a new era in proportionate penalties clause arguments, it was decided in 2002. *Id.*

¶ 39    Furthermore, defendant's argument fails on the merits. *Leon Miller* involved a timely filed petition with facts that stand in stark contrast to those of this case. Leon Miller received a mandatory life sentence for acting as a lookout during a robbery that he played no part in planning, had approximately one minute to contemplate his decision to participate, and never handled a gun in the course of the offense. *Id.* at 341. In short, he was "the least culpable offender imaginable." *Id.*

¶ 40    The defendant's situation in this case is in no way similar to that of the defendant in *Leon Miller*. Defendant was the triggerman, not a lookout. He planned his acts before deliberately putting them into action. Again, he was sentenced at the discretion of the trial court. Defendant's sentence does not violate the proportionate penalties clause. See *People v. Lauderdale*, 2012 IL App (1st) 100939, ¶ 39 (citing *People v. Sharpe*, 216 Ill. 2d 481, 521 (2005)).

¶ 41                                    CONCLUSION
¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 43    Affirmed.

¶ 44    JUSTICE WRIGHT, concurring in part and dissenting in part:

¶ 45    Our supreme court's decision in *Holman* restates that before any 17-year-old may be sentenced to a life sentence, the sentencing judge should consider the offender's characteristics of youthfulness, if any. As stated by the majority, these factors include the defendant's age and maturity level, family and home environment, degree of participation in the crime and susceptibility to peer pressure, incompetence, and prospects for rehabilitation.

¶ 46    The majority points out that the PSI submitted to the court advised the court of defendant's age, home environment or lack thereof, and the family issues that recently necessitated some prior counseling. I agree with the majority's conclusion regarding these three factors. I also agree that the record does not suggest defendant was incompetent.

¶ 47 However, I write separately to address two additional factors that the majority has overlooked. These factors, clearly considered by the trial court, include (1) defendant's degree of participation in the crime and (2) defendant's susceptibility to peer pressure. Unlike the majority, I conclude five factors related to youthfulness were considered by the trial court.

¶ 48 My conclusions are based on my review of the transcript of a combined sentencing hearing with Williams, defendant's accomplice, and this defendant. It is very apparent that defendant's degree of participation, as the triggerman, was heavily relied upon by the trial court. For example, during the same sentencing hearing, the court found that Williams "did not pull the trigger."

¶ 49 In addition, with respect to defendant's susceptibility to peer pressure, the court stated, I think we also have to conclude "Mr. Walker was more the leader in this incident." Further, the court found it to be "clear" that there was a "strong possibility" that Williams "would not have pulled the trigger in this incident as Mr. Walker did." These comments clearly indicate the court considered Walker may have been responsible for exerting peer pressure on his accomplice to go through with the armed robbery.

¶ 50 In addition, based on the trial court's remarks, I am hesitant to join the majority's conclusion that the court considered Walker's immaturity or lack thereof, without any reference to the trial court's statement that supports this inference. For this reason, I respectfully dissent from the statement contained in *supra* ¶ 34.

¶ 51 In conclusion, I agree the record reveals the trial judge did consider many, if not most, of the factors that are characteristics of this teenaged mind before imposing a life sentence. For this reason, I concur in the majority's conclusion that the sentencing hearing was fair even though defendant's petition was not timely.