# Illinois Official Reports

## Appellate Court

---

### *People v. Gregory*, 2020 IL App (3d) 190261

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CORY C. GREGORY, Defendant-Appellee. |
| District & No. | Third District<br>No. 3-19-0261 |
| Filed | July 13, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 05-CF-76; the Hon. Peter W. Church, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Patrick Delfino, Thomas D. Arado, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of Ottawa, for the People.<br><br>James E. Chadd, Peter A. Carusona, and Steven Varel, of State Appellate Defender's Office, of Ottawa, for appellee. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Justices Carter and Wright concurred in the judgment and opinion. |

**OPINION**

¶ 1        Following an evidentiary hearing at the third stage of postconviction proceedings, the Rock Island County circuit court found in favor of defendant, Cory C. Gregory, granting his request for a new sentencing hearing. The State appeals from that ruling, arguing (1) that the court erred in allowing defendant leave to file a successive postconviction petition in the first place and (2) that the court's judgment at the third stage was nevertheless erroneous. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant pled guilty in 2006 to first degree murder (720 ILCS 5/9-1(a)(2) (West 2004)) and concealment of a homicidal death (*id.* § 9-3.1(a)). Pursuant to the plea, the State agreed that defendant's sentence on the first degree murder charge would be no more than 40 years' imprisonment. The plea contemplated no cap with respect to the concealment charge; the parties agreed that defendant would be eligible for two to five years' imprisonment on that count and that it would be served consecutively to the first degree murder sentence.

¶ 4        As a factual basis for the plea, the State explained that the evidence regarding the first degree murder charge would show that on January 21, 2005, defendant was in a car with Sarah Kolb, Sean McKittrick, and the victim, Adrianne Reynolds. After stopping in a parking lot, Kolb began to attack Reynolds, at which point McKittrick exited the car. Defendant held Reynolds's arms while Kolb strangled her. Defendant also wrapped a belt around Reynolds's neck. An autopsy showed that Reynolds died of strangulation. The State further explained that the evidence with respect to the concealment charge would show that defendant, Kolb, and Nathan Gaudet dismembered Reynolds's body, put her arms and head into a black plastic sack, and threw that sack into a well.

¶ 5        The circuit court conducted a sentencing hearing on July 10, 2006. Defendant's mother testified that defendant's "personality started to change a little bit when he met [Kolb]." Defendant withdrew from friends and family members after meeting Kolb. She believed that Kolb was trying to control defendant. The court also heard impact statements from Reynolds's father and stepmother. A presentence investigation report (PSI) was submitted, which indicated that defendant was 17 years old when the offenses were committed.

¶ 6        The court sentenced defendant to 40 years' imprisonment for first degree murder and 5 years' imprisonment for concealment of a homicidal death, to be served consecutively. In its extensive commentary accompanying the sentence, the court observed that defendant had a "fairly lengthy history" of marijuana and cocaine abuse and that that fact likely "led him to a place where whatever judgment he had, albeit only 17 years old, was impaired." The court also cited defendant's lack of criminal history. The court stated that it believed defendant was contrite and that his actions would be different if he was given the chance to "do this over again."

¶ 7        The sentencing court discussed at length the potential mitigating factor that the offense was the result of circumstances unlikely to recur. On that point, the court commented: "I have to agree with [the prosecutor], I just can't tell. Do you have a character weakness? Will you follow someone else down the wrong path? I don't know. There's not enough before me from what I have to say one way or the other." Similarly, addressing whether defendant's character and attitude indicated a likelihood that he would commit future crimes, the court stated: "Again,

difficult for me to say. *** As long as you're addicted, you probably will commit another crime."

¶ 8      Defendant filed a timely motion to withdraw his plea and vacate the judgment. A hearing on that motion was held on April 22, 2008, and the motion was denied. On direct appeal, defendant argued only that counsel had failed to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2006). This court disagreed and affirmed the judgment of the circuit court. *People v. Gregory*, No. 3-08-0293 (2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 9      On January 3, 2011, defendant filed a *pro se* postconviction petition. Defendant raised four issues in the petition, none of which included a claim that his sentence was unconstitutional. The circuit court dismissed the petition as frivolous and patently without merit.

¶ 10      On June 10, 2015, defendant filed a motion for leave to file a successive postconviction petition, accompanied by the proposed petition itself. In the petition, defendant alleged that his sentence of 45 years' imprisonment was cruel and unusual under the eighth amendment pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). In the motion for leave to file, defendant explained his cause for failing to raise that claim in his original petition:

> "[L]egal precedent involving juveniles charged as adults were not set until after the denial of my previous post-conviction petition. Specifically I speak of *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012). *People v. Davis*, 2014 IL 115595 held that *Miller* and *Graham v. Florida* [citation], gave cause for failure to raise issue in proceedings that proceeded [*sic*] those decisions."

Defendant further explained that he suffered prejudice in that his inability to raise the claim resulted in a sentence that violated due process principles.

¶ 11      The circuit court granted defendant leave to file the successive postconviction petition. Defendant, now represented by counsel, filed an amended successive petition on March 23, 2017. The amended successive petition raised two claims: (1) defendant's sentence was an unconstitutional *de facto* life sentence pursuant to *People v. Reyes*, 2016 IL 119271, and (2) the sentence also violated the proportionate penalties clause of the Illinois Constitution. As relief, defendant requested a new sentencing hearing.

¶ 12      The circuit court conducted a hearing on the amended successive petition on May 31, 2018, after which it announced it would take the matter under advisement and invited the parties to file additional materials. A second hearing was held on May 6, 2019, to address the impact of *People v. Buffer*, 2019 IL 122327, on defendant's case. After that hearing, the court found that defendant was entitled to a new sentencing hearing and granted the amended successive petition with respect to the *Reyes* claim. In so ruling, the court commented:

> "[I]n just reviewing the transcript, I understand that the trial court touched on [defendant's] youth, he mentioned it several times during the sentencing hearing. However, as far as any specific consideration given to any specific circumstances that are uniquely intended to people who's [*sic*] brains, as we now understand, have not matured, I can't say that from that record that I believe that that, in fact, took place."

The court dismissed the proportionate penalties claim.

## II. ANALYSIS

On appeal, the State argues that (1) the circuit court erred in granting defendant leave to file his successive postconviction petition and (2) the court's substantive decision that defendant's sentence was unconstitutional was erroneous. We address each argument in turn.

## A. Leave to File

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) contemplates the filing of only a single petition. *Id.* § 122-1(f). Before filing a successive petition, a defendant must first obtain leave of court. *Id.* In order to obtain said leave, a defendant must demonstrate cause for his failure to raise the claim in his original petition, as well as prejudice that resulted from that failure. *Id.* The Act defines cause in this context as the identification of "an objective factor that impeded [a defendant's] ability to raise" the claim. *Id.* Prejudice is shown where the issue in question resulted in a conviction or sentence that violates the defendant's right to due process. *Id.* We review *de novo* a circuit court's judgment granting or denying leave to file a successive postconviction petition. *People v. Wrice*, 2012 IL 111860, ¶ 50.

Prior to addressing the State's arguments in detail, it is necessary to first summarize the relevant precedents relating to the sentencing of juvenile offenders.

In *Roper v. Simmons*, 543 U.S. 551, 578 (2005), the United States Supreme Court held that the eighth and fourteenth amendments prohibited the imposition of the death penalty upon offenders who were under 18 years old at the time the offense was committed. Five years later, in *Graham v. Florida*, 560 U.S. 48, 74 (2010), the Court held that a sentence of life imprisonment without the possibility of parole, when imposed upon a juvenile for a nonhomicide offense, was also violative of the eighth and fourteenth amendments.

A still more drastic change in this area of the law occurred in *Miller*. In that case, the Court considered a scenario in which juvenile offenders convicted of murder had been sentenced to mandatory life imprisonment without the possibility of parole. *Miller*, 567 U.S. at 465. Drawing upon its decisions in *Roper* and *Graham*, the Court opined that "children are constitutionally different from adults for purposes of sentencing." *Id.* at 471. The Court found that the mandatory nature of the sentences in question necessarily precluded a sentencing court from considering the relevant characteristics of youth. *Id.* at 477-78. Accordingly, the Court held that a mandatory life sentence without the possibility of parole, when imposed upon a juvenile offender, violated the eighth and fourteenth amendments. *Id.* at 489.

In 2014, our own supreme court considered the impact of the *Miller* line of decisions. *People v. Davis*, 2014 IL 115595. Notably, the *Davis* court held that *Miller* announced a new substantive rule and must therefore be applied retroactively. *Id.* ¶ 39. The United States Supreme Court would reach the same decision two years later in *Montgomery v. Louisiana*, 577 U.S. 190 (2016). Furthermore, and particularly relevant to the case at hand, the *Davis* court concluded that

> "[i]n terms of the requisite cause and prejudice of the [Act], *Miller*'s new substantive rule constitutes 'cause' because it was not available earlier to counsel [(*People v. Pitsonbarger*, 205 Ill. 2d 444, 460-61 (2002))], and constitutes prejudice because it retroactively applies to defendant's sentencing hearing. See 725 ILCS 5/122-1(f) (West 2012)." *Davis*, 2014 IL 115595, ¶ 42.

- 4 -

¶ 21 Following *Davis*, our supreme court extended the scope of *Miller* in a series of cases beginning with *Reyes*, 2016 IL 119271. In *Reyes*, the court considered a juvenile who had been sentenced to the mandatory minimum aggregate sentence of 97 years' imprisonment. *Id.* ¶ 10. Finding that the sentence amounted to a *de facto* mandatory life sentence, the court held that *Miller* rendered the sentence violative of the eighth and fourteenth amendments.

¶ 22 The next year, in *People v. Holman*, 2017 IL 120655, ¶ 40, the court held that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." Most recently, in *Buffer*, 2019 IL 122327, ¶ 27, the court essentially synthesized its two prior holdings, finding that the rationale of *Miller* and its progeny apply to any "life sentence, mandatory or discretionary, natural or *de facto*." Moreover, the *Buffer* court created a bright line for determining what constituted a *de facto* life sentence, drawing that line at 40 years' imprisonment. *Id.* ¶ 40.

¶ 23 With the foregoing principles in mind, we now turn to the State's arguments.

¶ 24 Those arguments proceed in two distinct parts. First, the State argues that *Davis*, and its holding that *Miller* claims satisfy the cause and prejudice test, are inapplicable in the present case. The State contends that the holding in *Davis* should only be read to apply to direct *Miller* claims. In other words, *Miller* barred the imposition of mandatory, actual life sentences (without consideration of the characteristics of youth), and that was precisely the situation the *Davis* defendant found himself in. The State argues that defendant, having been sentenced to only a discretionary, *de facto* life sentence, would not fall immediately under the umbrella of *Miller* or, by extension, *Davis*. The State maintains that defendant would have been obligated to argue for an extension of *Miller* and that he was equally able to make that argument as an extension of *Roper* or *Graham*—cases that had been decided prior to his initial postconviction petition.

¶ 25 Second, the State insists that this court's cause and prejudice analysis must only consider the case law as it existed at the time defendant filed his motion for leave to file his successive postconviction petition. It points out that defendant, in his motion, relied upon only *Miller*, *Graham*, and *Davis* in pleading cause for his failure to raise his claim earlier. The State maintains that, as defendant did not cite *Reyes*, *Holman*, or *Buffer*—those cases having not yet been decided—this court should not consider those cases in reaching our decision. The State concedes that, if this court finds that defendant has demonstrated cause, then the prejudice component must also be satisfied, as *Buffer* directly applies.

¶ 26 We begin by addressing the second portion of the State's argument, as it is dispositive. Initially, that argument is dubious on its face. It is well settled that *Miller* and its progeny create new substantive rules that apply retroactively. *Davis*, 2014 IL 115595, ¶ 39; *Montgomery*, 577 U.S. at 209. It is unclear why, if the rules themselves apply retroactively, a cause and prejudice analysis considering the application of those rules would not. It seems the State would have us dismiss defendant's present petition but then would have no objection if defendant then filed a new motion for leave to file, with updated citations. This would be far from an efficient administration of justice.

¶ 27 The above observations are merely ancillary, however, as the State's position is directly contradicted by our supreme court's decision in *Davis*. In that case, the defendant, who had been convicted on two murder offenses, filed his motion for leave to file a successive petition in April 2011. *Davis*, 2014 IL 115595, ¶¶ 5, 9. The circuit court denied leave in August 2011,

and the defendant appealed. *Id.* ¶ 9. The United States Supreme Court decided *Miller* in 2012, while the defendant's appeal was pending in the appellate court. *Id.* ¶ 10. Our supreme court found that the *Miller* decision constituted cause for failure to raise the claim earlier, such that the defendant's successive petition could proceed, regardless of the fact that *Miller* was decided only after the defendant had sought leave to file. *Id.* ¶ 42.

¶ 28    *Davis* thus stands for the proposition that appellate review of the cause and prejudice test should proceed retroactively, rather than, as the State suggests, by limiting review to the moment in time at which the motion for leave was filed. In this case then, we must consider the impact of *Reyes*, *Holman*, and *Buffer* to defendant's demonstration of cause. In *Buffer*, our supreme court held for the first time that discretionary, *de facto* life sentences (when imposed upon juveniles without consideration of the characteristics of youth) violate the eighth amendment. *Buffer*, 2019 IL 122327, ¶ 27. That is precisely the scenario defendant faces, and thus, *Buffer* is directly applicable to him. Of course, this defeats the first portion of the State's argument.

¶ 29    *Davis* also refutes the State's insinuation that defendant was free in 2011—at the time he filed his initial postconviction petition—to argue for an extension of the law.[1] After all, the *Davis* court did not tell the defendant that he could have made his argument before *Miller* was decided. Moreover, it is well settled even outside of the present context that the prior unavailability of a claim is cause to avoid a procedural default. As our supreme court explained in *Pitsonbarger*:

"[T]he United States Supreme Court, whose lead we followed in adopting the cause-and-prejudice test, observed:

' "Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule [of waiver], we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel *** would constitute cause under this standard." ' " *Pitsonbarger*, 205 Ill. 2d at 460 (quoting *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999), quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Indeed, the United States Supreme Court made plain the rationale underlying the rule when it stated:

"[I]f we were to hold that the novelty of a constitutional question does not give rise to cause for counsel's failure to raise it, we might actually disrupt state-court proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition. ***

'If novelty were never cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law.' " *Reed v. Ross*, 468 U.S. 1, 15-16 (1984) (quoting *Ross v. Reed*, 704 F.2d 705, 708 (4th Cir. 1983)).

---

[1]As an aside, under the State's theory, defendant in 2011 would have had to argue that *Graham* should be extended to him. The *Graham* Court held that mandatory life sentences for juveniles in nonhomicide offenses violate the eighth amendment. *Graham*, 560 U.S. at 74. Thus, defendant would merely have had to convince a court that *Graham* should also apply to *de facto* life sentences, and also to discretionary sentences, and also to homicide offenses.

- 6 -

¶ 30    Defendant's claim that his sentence violated the eighth amendment was unquestionably unavailable to him when he filed his initial postconviction petition in 2011. As we have seen, a line of cases beginning with *Miller* in 2012 has dramatically reshaped juvenile sentencing jurisprudence in that time. Even then, it was not until our supreme court's decision in *Buffer* just last year that a person in defendant's situation is covered by the new constitutional requirements. We therefore find that defendant has demonstrated satisfactory cause for not bringing his claim in his original postconviction petition. We accept the State's concession with respect to prejudice, as defendant has raised a claim that his sentence violated due process principles. See 725 ILCS 5/122-1(f) (West 2018); *Davis*, 2014 IL 115595, ¶¶ 18, 42. Accordingly, we find that the circuit court did not err when it granted defendant leave to file his successive postconviction petition.

¶ 31                                B. Substantive Relief

¶ 32    The State next argues that defendant was not sentenced in contravention of the eighth amendment and that the circuit court's judgment granting defendant's petition and ordering a new sentencing hearing was therefore erroneous.

¶ 33    Neither *Miller* nor its progeny established a *per se* prohibition on life sentences for juveniles, either *de facto* or actual. Rather, the *Miller* Court based its decision on the fact that mandatory sentences necessarily "preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Miller*, 567 U.S. at 476. Even where such a sentence is discretionary in nature, it will violate the eighth amendment if those characteristics and circumstances are not considered. *Holman*, 2017 IL 120655, ¶ 40. Our supreme court has thus summarized the state of the law as follows:

> "[T]o prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence." *Buffer*, 2019 IL 122327, ¶ 27.

¶ 34    In the present case, there is no dispute concerning the first of those two elements. The record establishes that defendant was 17 years old at the time he committed the offenses. His aggregate sentence of 45 years' imprisonment is over the 40-year threshold established in *Buffer* as constituting a *de facto* life sentence. *Id.* ¶ 40. Accordingly, we need only consider whether the sentencing court in 2006 nevertheless complied with the *Miller* requirements when it sentenced defendant to that *de facto* life sentence.

¶ 35    In *Holman*, following an extended analysis of *Miller* and its progeny, our supreme court described precisely what is required of a court when sentencing a juvenile to a *de facto* life sentence:

> "Under *Miller* and *Montgomery*, a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences;

- 7 -

(2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46.

¶ 36    In arguing that the sentencing court in this case met the above requirements, the State relies largely on this court's recent decision in *People v. Walker*, 2018 IL App (3d) 140723-B. In that case, the defendant was 17 years old at the time of his offense and was sentenced to a term of natural life imprisonment for felony murder. *Id.* ¶ 1. The defendant subsequently raised a *Miller* claim in a postconviction petition, which was dismissed at the second stage of proceedings. *Id.* ¶ 10.

¶ 37    Considering the defendant's case in light of *Holman*, this court found that the defendant's original sentencing had comported with the new requirements. *Id.* ¶ 35. Specifically, this court found that the PSI had adequately informed the sentencing court of defendant's age, family life, history, and characteristics. *Id.* ¶¶ 32-33. Further, this court found:

"Knowing defendant's age and background, the trial court opined that defendant 'would kill for the joy of it and seriously does not care at all about a human life, it makes no difference to him whatsoever.' This statement clearly reflects the trial court's opinion that defendant showed no potential for rehabilitation." *Id.* ¶ 34.

¶ 38    *Walker* is distinguishable from the present case both procedurally and substantively. First, it is significant that the appeal in *Walker* was from the second-stage denial of the defendant's postconviction petition. As a result, this court's review was *de novo*. *Id.* ¶ 13. In this case, the circuit court actually granted defendant's petition following a third-stage hearing. The parties agree that our review should thus proceed under the manifestly erroneous standard, under which we would only disturb the circuit court's ruling if we find "error which is clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997). Although, more specifically, that standard applies only to our review of the circuit court's factual determinations, while we review its ultimate judgment *de novo*. See *People v. Rivera*, 227 Ill. 2d 1, 11-12 (2007). In any event, we would find the circuit court's decision proper under any standard of review.

¶ 39    *Holman* established, unequivocally, that, where a court sentences a juvenile defendant to any sort of life sentence, it must determine "that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Holman*, 2017 IL 120655, ¶ 46. In *Walker*, this court found that that requirement had been satisfied, if only implicitly, when the court found that the defendant did not care for human life. *Walker*, 2018 IL App (3d) 140723-B, ¶ 34.

¶ 40    In this case, the sentencing court made no such comments from which this court might even infer that it found defendant "beyond the possibility of rehabilitation." *Holman*, 2017 IL 120655, ¶ 46. On the contrary, the court expressed ambivalence on the question of defendant's potential for rehabilitation. On the potential defendant would find himself in similar circumstances in the future, the court commented: "I just can't tell. Do you have a character weakness? Will you follow someone else down the wrong path? I don't know. There's not enough before me from what I have to say one way or the other." As to the general possibility

of defendant committing more crimes in the future, the court stated: "Again, difficult for me to say."

¶ 41 In short, the sentencing court neither stated nor implied that defendant was beyond rehabilitation. We also note that the State, in its brief, only argues that the court sufficiently considered defendant's youth and its attendant characteristics. It makes no argument that the court found defendant to be beyond the possibility of rehabilitation. Indeed, defendant raises that very point in his responsive brief, and the State declined to file a reply.

¶ 42 In summary, the circuit court in 2006 sentenced defendant to a *de facto* life sentence. Because defendant was a juvenile at the time his offense was committed, the eighth amendment as interpreted by *Miller*, *Holman*, and *Buffer* required that the court, *inter alia*, first find that "defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* The sentencing court made no such finding; accordingly, defendant was sentenced in violation of the eighth amendment. It follows that the postconviction court's conclusion to that effect was not error.

¶ 43                                    III. CONCLUSION

¶ 44 The judgment of the circuit court of Rock Island County is affirmed.

¶ 45 Affirmed.